will make its discussion. Good morning. Good morning, your honors. Michael McHale on behalf of the plaintiff appellants. May it please the court. And two of our plaintiff appellants are here with us today, Lieutenant Michael Marcinelli and Lieutenant Junior Grade Alaric Stone. Welcome. Contrary to the district court's conclusion, the Coast Guard hasn't shown that this case is moot because under this court's decision in Navy SEALS II, the Coast Guard hasn't shown that it has actually restored plaintiffs to equal footing with their vaccinated compatriots and that the intervening events here have actually eradicated the effects of the challenge discrimination, including the effect of being declared a disobeyer of a lawful general order in violation of the Uniform Code of Military Justice. Where was that declared? That was declared in CG 3307s. And I actually have the record sites for you on that. For Alaric Stone, it's ROA 267. For Jackson, Plaintiff Jackson, it's ROA 318. And for Plaintiff Marcinelli, it's ROA 416. It was a CG 3307 issued to them once they sort of stuck to their religious beliefs and didn't obtain the covenants. Where will that document appear in their service records? In their service records? Right. Where will that appear? How will it be present to a promotion board or others? Well, the Coast Guard, since the rescission of the mandate, has taken it out of at least the electronic file. But as we showed in the motion to supplement the record on Friday, it turns out a couple of them still had the paper copies and the paper files. I think that it might be that that's not the official record. But the problem is, one problem is, our plaintiffs testified they believe their commanders still have access to it. And I think another thing, Your Honor, is your point goes to the declaration by Vice Admiral Lee that given the unique military context here and the uniquely small size and tight knit community in the Coast Guard, those orders have a cognizable reputational impact on these service members' careers. That's connected to a tangible harm in their ability to advance and have full-fledged careers. Is your reputational argument really that these documents don't need to be in any particular service file? It's just known that the Coast Guard still considers failure to take the vaccine for these reasons to be a violation of a lawful order, sort of floating above it all, independent of any documentation? I think that's right, Your Honor. Given the unique context of the military and Vice Admiral Lee's unrebutted testimony to this point, saying that he has personal knowledge that many in Coast Guard leadership still view these individuals to have violated a lawful order, notwithstanding RFRA and the First Amendment, and his view that a declaratory judgment, at least, that those orders from the Coast Guard were unlawful, would likely have a concrete beneficial impact. Because Coast Guard leadership also follows and respects court declarations. So I think it's true. Even if they're not in the, if they eradicate even the paper files, this reputational impact is still tangible. And under this court's decision in Connell versus Shoemaker, it recognized that if reputational harm has a cognizable, practical, disadvantaging effect to someone's livelihood, that is something that can be subject to a declaration. Well, Connell is a military case, but it is such an extraordinarily distinguishable case factually, from what we're dealing here, service members and their reputation versus an off-post apartment owner. You know the facts better than I. I wonder how good a fit that is for what you're talking about. The fact that you don't have a better case than that concerns me. Well, I'd say the logic of it, first of all. Understood. OK. What about, so the Fifth Circuit has pointed in some of its reputational cases. I think Danis versus Jones was one. And it traced itself back to some DC circuit cases. And one case was McBride, which we cited in our briefs. And in McBride, there had been an order of reprimand against a judge. And the court recognized that stigmatizing reports in the historical record were a cognizable harm. And the declaratory judgment that deemed those orders themselves unlawful would likely provide actual relief. So it's the logic. Logically, even the Supreme Court's cases on collateral consequences, you don't just look at it. Any type of collateral consequence that has some sort of cognizable impact is relevant. So it's the logic of it, Your Honor. Another big key in this case, of course, is voluntary cessation, especially after the Supreme Court's recent decision in FBI versus FICRE. And I think the consequences aspect of this case are relevant there. But as we argued in our briefs, the NDAA in 2023 only required the Department of Defense to rescind the challenge mandate. It did not require the Coast Guard to rescind the mandate. We pointed out it required the Secretary of Defense to rescind the mandate. But even more, Your Honors, it required the Secretary of Defense to rescind the mandate pursuant to the August 2021 memorandum he issued, which only applied to the Department of Defense. And it said that memorandum in which Department of Defense service members, quote unquote, were required to get vaccinated. So it just seems indisputable that that 2023 NDAA only applied to the Department of Defense and not the Coast Guard. And the Coast Guard then told the district court when it provided notice about that NDAA, that's an ROA-1303, that while we're not part of the Department of Defense, we intend to come in alignment with it. Well, OK, but that's voluntary. So now you're under FICRE, and you have a- Well, you're talking about voluntary and voluntary cessation in some way to undermine litigation. It doesn't mean that the Coast Guard, whether it fits within armed forces as intended by that document, she would be a hard slog to be the sole armed service that is still fighting this. And so it seems to me it was inevitable, perhaps, to one way to look at this, actually, for the Coast Guard to give in as well. It doesn't seem to me to be we really had a choice if I'm the Coast Guard. We have to get in step with the rest of the armed forces. Legally, I'm not sure that's true, Your Honor, but- Legally, it may not be true. But I do think practically it would be, and it does fit into whether it's truly voluntary. Factually, voluntariness is a fact. The question, I think, of voluntary secession is, are you legally mandated to do something? Did you do it voluntarily? I guess I'd say even if- I was also a very strong standard about the likely, I'm trying to remember the exact language, but how were the chances that it might recur with legislation? Absolutely clear. Absolutely. Right. That's a good point. They are not admitting that they couldn't go back. They're not admitting that- Correct. Correct. Right. If anything, we'll ask them, I'm sure, shortly. I presume, believe that they could go back. And what's more, I think you're saying that they actually haven't rescinded the mandate at all. That's right. In effect. Certain consequences may have been taken off the table, but other consequences remain on the table. Correct. You're still fighting a fight. The city of Jacksonville case, a Northeast Florida general contact tracker for a city of Jacksonville, a 1990 Supreme Court case. They said, while we're talking about voluntary cessation, it's kind of age for sure, because there's an ongoing kind of legal disadvantage that existed in that case. So too here, with these ongoing consequences. One of those consequences, I forgot to mention, Judge Southwick, to your point, the Coast Guard refuses to remove the Navarro memos that continue to flag these plaintiffs as having- The principal problem with Navarro memo, I've looked at it. Yeah. It doesn't say they violated a lawful order or whatever, but it flags it. Here's one of those Coast Guard members, implicitly, I guess, maybe it's more than implicit, who didn't take the vaccine. Well, it says that the Coast Guard flags these folks as having received administrative remarks referencing the COVID-19 vaccine mandate. And in the tight-knit community of the Coast Guard, that has meaning. That has meaning flagging these individuals as disobeying a lawful order, at least not getting vaccinated initially, and raising a huge red flag. It doesn't say they violated a lawful order. You're saying all that's implied by pointing out that this is one of those Coast Guard members. But it's in their record. Implied. I'm trying to get to the bottom of the significance of the Navarro memo itself. Because it will put commanders on notice that these folks are among the group that didn't get vaccinated and likely violated a lawful order. So it continues that ongoing harm. Reputation is so critical. I guess I would go back as well to that declaration from Vice Admiral Lee, which has not been rebutted. If commanders know that these folks are among the individuals who violated a lawful order, that has a very strong likelihood of resulting in denied promotions and opportunities, especially at competitive promotions at higher ranks. That is critical here. And the Navarro memo keeps that red flag on their record. You're saying it's a scarlet letter. It's a scarlet letter. It's a scarlet letter. And scarlet letters, the harm can result from an implied meaning just as much as an explicit meaning. I think on voluntary cessation, Your Honor, Judge Southwick, even if the Coast Guard was mandated to rescind the primary mandate, there's no dispute that the implementing policies of that mandate were rescinded voluntarily. And this court recognized as much in Navy SEALS 2 at footnote 7. And indeed, the Department of Defense, the Secretary of Defense, when he made that initial rescission last January 2023, he said, well, for now, commanders can continue to take into account vaccination status against COVID regarding deployment, assignment, operation decisions. Notwithstanding the 2023 NDAA. So it was clear that the military Department of Defense there and the Coast Guard here is not required to rescind the implementing policies. But they did. So voluntary cessation applies no matter what. Even if you think the 2023 NDAA applied to the Coast Guard, there's no dispute that it didn't require them to rescind the implementing policies. Counsel, on the deployment and the specific assignments, it seems to me the distinction, and I'll hear if it's true, I guess, by the government, when you're dealing with rating this, when you're dealing with sending military folks on a mission, their vaccination status is a separate issue at that stage than it is when you're talking about promotions and otherwise. Is it? I mean, it does seem to me at least reasonable that to the extent COVID's still out there, if you're sending people out on a mission, whether they are vaccinated would be something a commander or a decision maker would consider. I think that is very possible, Your Honor. And that goes to the merits of the RFRA analysis. And in that case, strict scrutiny could allow the military to require vaccination in that context. But the key here is mootness. And whether we receive the request of relief, we saw it as originally demanded in the complaint. So I think I agree. It is possible, possibly reasonable, depending on the facts and circumstances, to require vaccination. But that's a merits question. And we did seek full-fledged participation via the complaint, full-fledged participation in the Coast Guard, notwithstanding vaccination status, given RFRA's supervening protections. I think right now, Your Honor, under current circumstances, it's important to note the Department of Defense in its memorandum, implementing memorandum, has said commanders cannot take into account COVID vaccination status in deployment, assignment, operational decisions. So it would make sense that we have some sort of level playing field here, that the Coast Guard would provide similar assurances. And maybe if circumstances change, that's fine. And RFRA is flexible. The big RFRA problem here, Your Honor, was failure to consider individual circumstances. That's the harm that applied to the class as a whole. And that would allow, it points up the fact that you could require vaccination, allow the Coast Guard to require vaccination, in those circumstances. But from what I understand, Your Honor, especially now, deployment, being able to deploy, is important to advancing in someone's military career. If you're not going on deployments, it could hurt you in promotions. And so given that the Department of Defense, right now, is affirming they have those protections in the Department of Defense branches, the fact the Coast Guard does not is a major problem. And Navy SEALs, too, Your Honor, said that it's critical that the defendants rule out the ability of commanders to consider vaccination, in order for the defendants to show mootness here. So even if, on the merits, RFRA would say, sorry to the service member, you've got to get vaccinated. For mootness purposes, Navy SEALs, too, said you have to rule out, critically, at this point, the ability of commanders to consider vaccination status to get the mootness. Your Honor, precedent. List format, it's in your briefing, but list format, what would you highlight is the difference in the way the Coast Guard has treated this than the other services? Right. The Coast Guard has merely canceled prior policies that required denying opportunities to the service members, whereas the other branches, via the Department of Defense memo, has forbidden commanders from taking into account vaccination status, even on a case-by-case basis. It's not mere cancellation of prior mandatory denials. It's actually affirmative protection in the other branches, given the state of affairs of the world right now in the ability to promote and have deployments and whatnot. But the Coast Guard's merely canceled. And I think it's their burden to show mootness. They've cited a string cited to various policies, but they haven't shown similar language that actually, and they've never represented that commanders in the Coast Guard are forbidden from taking this into account. Instead of, they're no longer categorically discriminating against people who didn't vaccinate. They're merely doing it on a case-by-case basis. They're preserving the discretion. Correct. Correct. And we sought relief from even that kind of harm and haven't yet been granted it. I'll reserve my time. All right, Counselor. We'll hear from you again. I'm not trying to throw your argument off. I don't want to start the clock. All these briefs we get from Justice Department, civil division, doesn't have an assistant attorney general. Is there no assistant attorney general? There's a principal deputy. That's Brian Boynton. Not yet an assistant attorney general? Not to my knowledge, no. All right, thank you. May it please the court, Sarah Clark for the United States. Plaintiffs have challenged the Coast Guard's COVID-19 vaccination requirement. That requirement was rescinded more than a year ago. And since then, the Coast Guard, like the other branches of the armed forces, has gone above and beyond to put plaintiffs and other service members back on an equal footing and to remove the effects of the vaccination requirement now that it's been rescinded. And I just want to start by making a couple of points of clarification that I think go to the heart of some of the court's questions. Plaintiffs take issue, for example, with the Navarro memo. They have this concern that in the future, the fact that they declined the vaccine will be held against them. But that's just, one, not consistent with Coast Guard policy, and two, not even possible as a practical matter. So the Navarro memo, for example, as we pointed out, is only visible to the service member and to record-keeping personnel. It's actually not visible at all to promotion boards, assignment panels, et cetera. The same is true, for example, for these paper records, these kind of unit-level paper records that plaintiffs discussed in their motion on Friday. So the concern that promotion boards, assignment panels, people who have power over plaintiffs' careers will basically ding them for their declining the vaccine. It's not even clear causally how that could happen because they don't have access to that information. And of course, even if they did, it still would be extremely speculative to say that in the future, they think something bad will happen to their careers when the Coast Guard has clearly... Whose burden, though, is it to speculate? Well, of course, it's the defendant's burden to show mootness, but looking at the... The standard is pretty rigorous, as I understand it. It has to be absolutely clear that the challenged conduct will not recur. Do you agree with that? I think what the Supreme Court said in FCRA and what this court has said in other cases is that there's not a reasonable likelihood. So, and this court said as much in Navy SEALs, I think, because it said... It has to be absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur, to recur. Right, right, reasonably be expected to recur. So... Can you, on behalf of the Coast Guard today, guarantee that these individuals, the plaintiffs, will never suffer any detriment of any kind throughout the rest of their careers with the Coast Guard? Of course, Your Honor, I cannot make that kind of sweeping representation. That means, basically, that it could happen. It is not absolutely clear that these consequences, this challenged conduct, as some would say, unlawful, it could very well recur. Well, again, I think... In other words, I'm not gonna beat you up for not giving me that answer, because you can't, because that's not the Coast Guard's policy. The Coast Guard is reserving options. Right, I want to... That's why the litigation's still alive. Sure, I just want to focus on the reasonable likelihood language. I take Your Honor's point, but looking at that as a whole, and as this court pointed out in the Navy SEALs case, the fact that there is a possibility that, in that case, the court was discussing the possibility of re-imposing a vaccination requirement, that mere possibility isn't enough, and that's because what we need to have here is a sufficiently concrete dispute to support an Article III case or controversy. So, of course, I can't say nothing bad will ever happen to these plaintiffs, but what I can say is the Coast Guard's policies have completely walked back the COVID-19 vaccination requirement, just as the Navy SEALs, and we can see that these specific plaintiffs have been proceeding along in their careers. So, obviously, Marcinelli, who his promotion was discussed in the briefing. You understand how the doctrine works, is the worry that the Supreme Court has repeatedly articulated, that our court has repeatedly articulated, is that once the case is over, then the Coast Guard can theoretically return to its previous conduct. So, the question is, what assurance can you give that even after this case is mooted, if it is, in fact, mooted, that these problems will never recur again? Sure, I think we could just look to how events have played out, and the fact that the Coast Guard has not just, so, I guess, two buckets. So, the first bucket- I read the law to be more than what has happened to date. It's about being absolutely clear that it won't happen in the future. Right, and I think we know that from what we've already seen happen. And so, I would say of the two buckets, the first would be the Coast Guard policies, right? Doing as the Navy did, going above and beyond rescinding. And- One question about the policy, just because- Yeah. I was in counsel, made a representation. I want to give you a full chance to respond. They say that one important difference between this case and the Navy SEALs case is that in Navy SEALs, they went to a total prohibition on any sort of decision based on vaccination status. Whereas here, they say that you've simply rescinded the categorical policy, and now it's more of just a case-by-case opportunity for the Coast Guard. Do you want to respond to that? Yes, Your Honor. We disagree with that. So, it's true that the wording of the sort of personnel policies, these kind of implementing policies, is different between the Navy and the Coast Guard, but there is no functional sort of real world difference in how they work for a couple of reasons. So, the way the Coast Guard handled it was to say, you know, when this requirement was in effect, we had all these sort of subsidiary, basically disabilities attached to not being vaccinated. What they did was say, we cancel all of that. There is no, plaintiffs take that to mean, oh, now they're just free to do it on an ad hoc basis, but that's not consistent with how the Coast Guard views the COVID-19 vaccination requirement mandate. It's not consistent with the fact that that information isn't available to the point I was making earlier. Are you able to represent to the court that the Coast Guard's policy now is that any decision based on vaccination status is unlawful? No, Your Honor, I can't make that representation. That's not- I'm gonna ask you a question just to nail this down. Could you represent to the court, I assume the answer's no. Could you represent to the court that any Coast Guard official that does take such action will be disciplined? No, Your Honor, I can't make that representation. But again, I just want to point out that the sort of connection between the sort of fact, there's just no kind of causal chain between the fact that they've been, you know, that they didn't get vaccinated in the past. That's sort of decision makers about their career. And that brings me back to the kind of second bucket that I wanted to flag, which is just that we've seen these plaintiffs progress in their careers unimpeded by the fact that they declined the vaccination while their requirement was in effect. So Marcinelli obviously, as we discussed, was promoted to Lieutenant. This is a retroactive promotion that gives him all the points and credit backdated to when he would have received it. And even more recently, Plaintiff Stone, his promotion to Lieutenant has been authorized and that's going to take effect in May. So when plaintiffs say, you know, we're concerned that our careers are tarnished forever, that's just not consistent with their careers, how they've been progressing. You understand the whole purpose of this doctrine is essentially to be cynical about all this, right? Yes, all this is happening. They're being protected precisely because there's pending litigation. Right, and I want- Or what happens when the litigation, if the litigation ends up moot. Right, and I think what should give the court a lot of comfort on that front is that the Coast Guard simply is not going to place officers in a position of trust for the purpose of scoring points in litigation, right? It's entrusting these plaintiffs in these promotions and I think it's just unrealistic to think that it would be doing that for the purposes of this case instead of, I think, the much more reasonable explanation, which is just, it's rescinded the vaccination requirement. That's no longer relevant to the Coast Guard in terms of how these plaintiffs' careers should progress at just- Well, counsel, let me take this in maybe not much different direction. One concerning thing, maybe it doesn't affect the outcome, but one concerning thing is the Coast Guard's, so far, decision not to do what the other services have done, the discussion that you've had to some extent with my colleague, which is to affirmably state that none of this past history regarding the vaccine will be used in the future to affect the careers of officers who did not, for religious reasons, take the vaccine. So that's one concerning thing. And the other is the position that the Coast Guard still seems to be taking, and maybe the other services do too, and maybe that's an answer, is that they were violating a lawful order. So can you say anything to the effect that should be on this court of the Coast Guard's decision not to make the affirmative statement that other services, I mean, they conformed to the DOD directive or whatever it was that may not have applied to them to pull back from the COVID vaccine requirement, but they have not conformed to what the other services have done to make this affirmative statement? So on your Honor's first question, they have conformed in practice, right? The wording is not the same, but the effect is. When we say it's not the same, the statement that I think is missing that this will not affect, that we assert this will not affect future careers, which gets to some extent to the question Judge Hose said, if that statement is there, then some commander who lets it affect will be violating that directive. That I think that brings us to the fact that this simply isn't information that, for example, promotion boards even have access to. So already I think on a policy level, although it's worded differently, the intention and the effect is the same in that this is something we used to consider and now all of those policies that told you to consider that are swept away and we're back to where we were before. So we have that and then we have the fact that this information just isn't, that's not something that they're tracking for purposes of promotion. My understanding is that they're not tracking it for purposes of deployment. So there's just no occasion whereby some decision maker would be able to say, despite this new policy and the new approach, I'm gonna kind of take it upon myself to chart a different path. They wouldn't even, I think, be able to do that based on the information available to them. And I guess two points. I mean, to Your Honor's second question about the lawful order issue, the Coast Guard is completely in alignment with the other services there. My understanding is all of the branches of the armed forces do think, if you disobeyed a lawful order, that was a lawful order. They haven't come out and said, and all of what we did, you know, we walk it all back, it was all wrong. And I think plaintiffs tried to point to that and say, well, this case can't be moot until the military says we were totally wrong. And I think this court's decision in Navy Seals and the Supreme Court's decision in Fikery are just two examples where courts have pointed out that it's just, I should say this court's decision in Yarles and the Supreme Court's decision in Fikery, where courts have made a point to note that, of course, parties can continue to vehemently disagree about the lawfulness of the conduct. That's no barrier to mootness, and in fact, that's quite common. I think one other sort of point of clarification that I wanted to touch on, which one of my responses reminded me was, you know, plaintiffs make a big deal about this declaration from Admiral Lee about the sort of effects that they fear their declining the vaccine will have in the future. Admiral Lee retired in 2016, so he has not had a sort of firsthand experience with either the mandate itself or with its rescission. And I think just the sort of size of the Coast Guard, the way that their records work, all of that really undermines plaintiff's suggestion that there will just be this kind of general knowledge floating around about who declined the vaccine, and that that will then be used against them. I think that's far too speculative to support a case or controversy here. If this court has no further questions, I'm happy to rest on my briefs and ask that this court affirm. All right, counsel. Thank you, Ms. Clark. Do you want to, I assume you will, but respond to the government's contention that as a practical matter, your clients are never going to suffer any consequence, so this is all sort of worrying about nothing. Right, aside from the ongoing... She said a number of things about how the Coast Guard works. So I just want to get your take. Aside from the ongoing consequences that are in the record, the rule for voluntary cessation is, as you said, absolute clarity that the challenge terms are not reasonably likely to recur, but the Supreme Court recently confirmed... But in fairness, she's saying, I'm sorry to cut you off, but in fairness, she's saying that as a practical matter, given how the Coast Guard is operated and organized, it is absolutely clear. She's, I think she agrees with the standard. She thinks the government can meet it. So I think it goes to something she just said, which is about Vice Admiral Lee's declaration, right? And there's no responding declaration. There's no counter evidence in the record that he's wrong about the practical impact of service reputation on these individuals' military careers. They're saying in a brief that he's just speculating, but he testified to personal knowledge about how service reputation works, especially based on getting an order that our clients allegedly violated a lawful order. That goes to any issue, whether COVID or not. This happened to be regarding COVID. And again, personal knowledge he has that many in the Coast Guard leadership still believe these individuals to have violated a lawful order, which is a big problem for their careers. There's no counter evidence. So I think it's just assertions. There's not actually counter evidence in the record. Well, Counselor, it does seem to me that to require any of the services to make a firm statement that this was an unlawful order is beyond really the obligation of the services, unless you can show there's some injury that you're having that would allow you to continue to insist on that. That no such order was entered as to the other, no such decision was made as to the other services, was there, that their orders were unlawful? We're not asking for the Coast Guard to say their orders were unlawful. We're asking for a declaration from a court to say that the orders issued to these plaintiffs to receive a vaccine was unlawful, given the supervening referral protections. What we're asking- What I mean by that is that the service members who brought the Navy SEALs case never got such an order, but we still found the case to be moot, correct? Only because the Navy had actually implemented affirmative protection. Okay, but that's a different way to proceed. And so to suggest here that there must be from the Coast Guard some sort of admission that it was an unlawful order, seems beyond, maybe that's not what you're asking for. Correct, we're not asking the Coast Guard to necessarily even repudiate what they did. It's true, repudiation can be a factor in voluntary cessation, but the law is you don't have to repudiate. It can still be, the case can still be live. The problem is there's no guarantee they won't do the mandate again or issue another COVID requirement again. We're not asking them to repudiate and say what they did was unlawful. We're asking them to assure, which I don't think they can do, that they'll never actually issue a similar requirement again, not repudiation. I thought you were headed all of a sudden in a different direction in rebuttal, but okay. Definitely not repudiation. That's not what we're saying the Coast Guard has to do. And Your Honor, opposing counsel says there's no practical difference between the Coast Guard's cancellation of policies and what the other branches have done. We know that's not true, Your Honors, because during COVID and during its mandate, it issued all, the Coast Guard issued all Coast 157.22 saying that unvaccinated service members could receive trainings necessary for their positions. And yet Plaintiff Stone was still denied by his supervisor the ability to go to that training. And that's at ROA 166, 167, and at 1528 through 1529. And actually he pled that at the outset of this complaint. It happened right before we filed this complaint. And it was one of the harms from which we were seeking relief. So there is a practical difference. I mean, we have near say so from the other side, but mere cancellation of policies from experience has shown to still result in denial of an opportunity on an ad hoc basis. It's already occurred. There's no reason, especially in a voluntary cessation that the Coast Guard is able to show it's not reasonably likely to occur. And again, it's either your question is immediately or sometime at a later, more propitious moment. And a point I wanted to make, Your Honor, is if you look at the city of Mesquite versus Aladdin's Castle Supreme Court case, it talks about remoteness goes, the mere remote prospect of a harm occurring goes to whether we need injunctive relief. And that's a kind of question for the trial court. But it doesn't mean the court lacks power to issue a declaratory judgment. And at the very least, that's what we're seeking. Just a declaration that the Coast Guard's issuance of these orders in violation of RFRA's requirements to at least consider individual circumstances violated RFRA. And that would still leave the Coast Guard ability to make case-by-case determinations. We've never denied that. So for all these reasons, Your Honors, that fee crowd just to close in the Supreme Court decision made clear that mootness principles still hold when it comes to matters of national security. So too here. The Coast Guard has met its burden. This court should reverse. All right, counsel. Thanks to you both for illuminating this case further for us.